UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

Gregory Taylor, a single person,
                        Plaintiff,

        -v-                                                 Case No. 3:04-cv-104

Otter Tail Corporation, a foreign
Corporation, et al
                        Defendants

MEMORANDUM AND ORDER

The jury verdict in this matter started as a model of logic.  They assessed 49% of the fault involved against Otter Tail Power Company, the owner of the distribution pole which had rotted away at the ground line.  They then proceeded to find the plaintiff was 31% at fault for climbing the pole without performing all of the initial tests recommended by the various experts.  They found no fault attributable to Mid Continent, the cable company who had hired Cable Services, the Plaintiff's employer, to hang the cable on Otter Tail's poles.  They then found the presence of an "other" and assigned 20% of the fault to "other", who the Court assumes to be Cable Services for a perceived lack of adequate training of its linemen employees.

In the assessment of damages, the rationality previously shown seems to have vanished.  The Plaintiff proved a total wage loss and medical expense of $30,623.56.  The jury completed the blank for "past economic damages" with the sum of $190,523.56.  The balance must have been some computation for wage loss after the Plaintiff quit his job with Cable Services some three years after the accident.  From the testimony, two events occurred which triggered the leaving of

1

his employment–the first being that the next job of the company was located in Nebraska, and the second was the receipt of $42,000.00 from Workers Compensation, which led the plaintiff to buy equipment and go into the snow removal business in Bismarck.  As he described the ultimate success of the venture–"Unfortunately, it forgot to snow for the next two years."

The jury then proceeded to award $893,200.00 for future economic damages and $564,000.00 for non-economic damages.  The $564,000 times 49% is bulletproof.  The plaintiff's injuries are severe and permanent.  He has some nerve damage which causes leg pain, but the primary injury is the nerve damage which requires him to self catheterize three or four times a day in order to completely empty his bladder.  Virtually any amount awarded for non-economic damages could be justified.

Defense counsel urge that no award for wage loss or even diminution of earning capacity can be supported by the record.  Motions to strike the appropriate lines from the verdict form were made prior to the submission of the matter to the jury.  I took those motions under advisement.

The record shows:

1. Mr. Taylor voluntarily quit his employment with Cable Services at the completion of the North Dakota contracts.

2. He was physically capable of performing all of the duties required of the foreman/supervisor position to which he was promoted immediately after the injury, at a higher rate of pay and greater benefits than he previously earned.

3.  All of the physicians involved indicate that his residual injuries do not prevent his employment and the attending physicians advised him to return to work.

4.  He worked some 3 and ½ years after the accident, and when he announced his intention to quit, his employer placed him on a 6 month "leave of absence" so that his benefit and seniority status would not be effected should he decide to return to work.

5.  His leg causes discomfort when traveling long distances, and the longest round trip he has taken on his motorcycle ("a Harley, what else?") is approximately 90 miles.

6.  His employer, Cable Services, would have arranged for airline travel to and from Bismarck at company expense.

7.  The only evidence of earning capacity, and loss thereof, is the $75,000 a year which Cable Services would have paid him, along with benefits, if he had chosen to return to work.

8.  He perceived that those working under his supervision thought that he "was not pulling his own weight" because he could no longer climb poles.

The Court finds that the award for future economic damages is not supported by any evidence, except for the medical testimony that the Plaintiff's condition was stable–would not improve further or worsen in the future. The record indicates that the plaintiff takes some medications and can expect at least an annual trip to the clinic for rechecks on his condition. I don't know what future costs can be anticipated and no testimony was introduced regarding them.

The Court finds the evidence insufficient to support any award for future loss of earnings or diminution of earning capacity. Viewing the evidence in a light most favorable to the verdict, an

award of future medical expenses could be extrapolated from past medical expenses incurred.  In 2005, the Plaintiff spent $226 on follow-up office visits and $442.16 on medication.  Not included is the cost of catheterization supplies.  With some rounding and a nod to the expected cost of catheterization supplies a sum of $700.00 per year for future medical expenses is arrived at.  The jury was instructed the Plaintiff had a life expectancy of 39.2 years.  This produces a total figure for future medical expenses of $27,440.00

On its own, the court orders as follows:

      1.  The award of $190,523.56 for past economic damages is reduced to $30,623.56

      2.  The award of $893,200.00 for future economic damages is reduced to $27,440.00, under the assumption that there will be some future medical and drug expense.

      3.  The award of 564,000.00 for non-economic damages stands as set by the jury.

The clerk's office is directed to enter judgment in favor of the plaintiff and against the Defendant Otter Tail Power Co. In the amount of $622,063.56 times 49% or the net sum of $304,811.14 plus costs and disbursements as taxed and allowed.

Dated this 31st day of May, 2006

                                                /s/ *Patrick A. Conmy*
                                                Patrick A. Conmy, Senior District Judge
                                                    United States District Court